IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **DAYNA STAGGS**, | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| v. | * | Civil No. **PJM 08-728** |
| | * | |
| **KANYE WEST,** *et al.*, | * | |
| | * | |
| Defendants | * | |

**MEMORANDUM OPINION**

*Pro se* Plaintiff Dayna Staggs has filed a Second Amended Complaint, alleging that recording artist Kanye West and various other parties used portions of a song he wrote without his permission, in violation of the Copyright Act of 1976, 17 U.S.C. § 101 *et seq*. The only remaining Defendants in the case are The Island Def Jam Music Group, a division of UMG Recordings, Inc. (incorrectly sued herein as "The Island Def Jam Music Group"), UMG Recordings, Inc. (incorrectly sued herein as "Universal Music Group"), and Vivendi S.A. These three entities will be referred to collectively as "the Universal Defendants."[1]

The Universal Defendants have moved to dismiss on the grounds that Staggs has failed to allege a viable claim for copyright infringement as a matter of law, in addition to which, they submit, the Complaint is procedurally flawed. For the following reasons, Universal's Motion to Dismiss is **GRANTED IN PART** and **DENIED WITHOUT PREJUDICE IN PART.**

---

[1] The Court previously ruled that the Second Amended Complaint filed by Staggs' former counsel would serve as the operative Complaint, and that the case would only proceed against the Universal Defendants. After those Defendants moved to dismiss, and following full briefing on their motion, Staggs filed a Third Amended Complaint. The Court, however, does not accept the Third Amended Complaint and the Second Amended Complaint remains the operative Complaint.

1

**I.**

Staggs, a singer and songwriter, and self-proclaimed producer, has allegedly written, sung and recorded numerous songs throughout the years. He contends that he wrote the song at issue in this case, which is entitled, "Volume of the Good Life" ("Song"), in Frankfurt, Germany in 1984. The Song was released by Pallas Records the same year. He alleges that he has a registered copyright in the words and music of the Song, Registration No. PA 330 301.

Staggs further states that in March and April 2002, he traveled to several concerts with Kanye West and Shawn Corey Carter, a.k.a. Jay-Z, and discussed music with them, including his Song. Staggs states that he created a MySpace page in late 2003 with a link to his personal website where his songs, including the Song, were available to be downloaded, and that both West and Jay-Z added Staggs as a "friend" through MySpace and communicated with him on the website. Staggs believes that at some point West downloaded a copy of the Song from his website.

On September 11, 2007, West released an album entitled "Graduation," which contained a song entitled, "Good Life." Good Life was then released as a single on October 1, 2007. Both West's song and the album were successful, apparently selling two million units and receiving eight Grammy nominations and three Grammy awards.

Island Def Jam is a record label under which West released his recording of the Graduation album. Staggs alleges that UMG Recordings and Vivendi also recorded, manufactured and distributed West's song.[2]

---

[2] The Universal Defendants indicate that UMG Recordings marketed, released and distributed the recording of West's song after it was created, and that Vivendi, the parent company of UMG Recordings, was not involved with West's song.

Staggs contends that West's "Good Life" is virtually identical in sound and melody to the chorus of Staggs' Song, "Volume of the Good Life." The second verse in West's song, he says, contains the lyrics "Now throw ya' hands up in the sky," which are identical to the lyrics "Hold your head up high" in Staggs' Song. Finally, Staggs alleges that West incorporated samples[3] of Staggs' Recording, and although altered, also certain background vocals and percussion rhythms.

The Universal Defendants have moved to dismiss, advancing four main arguments: (1) the Court lacks jurisdiction over Staggs' claim because he has not alleged that he owns a valid copyright registration for his Recording; (2) he has failed to allege a viable claim for copyright infringement because there is no "substantial similarity" between his Song and West's song; (3) he has failed to join indispensable parties, including the owners of the copyright of West's song and the composers and publishers; and (4) he has failed to allege any actual violation of copyright law by Vivendi, or any basis for vicarious liability on its part.

## II.

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp v. Twombly*, 127 S. Ct. 1955, 1974 (2007). In making its determination, the court must consider all well-pled allegations in a complaint as true and must construe all factual allegations in the light most favorable to the plaintiff. *See GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001). The court need not, however, accept conclusory factual allegations devoid of any reference to actual events. *See E. Shore Markets, Inc. v. J.D. Associates Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

---

[3] A "sample" is "making a collage, taking a small piece of an old work and using it in a new work." *Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1026 (3d Cir.2008).

3

**III.**

A plaintiff asserting a claim for copyright infringement of a certain work must prove, as a jurisdictional prerequisite, that the work has a valid copyright registration. *Mays & Associates, Inc. V. Euler,* 370 F.Supp.2d 362, 366 ("It is axiomatic that copyright registration is a jurisdictional prerequisite to bringing an action for infringement under the Copyright Act"). The recording of a song has two possible copyrights associated with it: (1) the copyright in the music composition/words and music; and (2) the particular sound recording of the song.

Turning first to the Song, in addition to establishing that a valid copyright exists, Staggs must show that Universal "had access to the copyrighted work and that [Universal's] work is 'substantially similar'" to Staggs' Song. *Comins v. Discovery Communications, Inc.,* 200 F. Supp. 2d 512, 515 (D. Md. 2002) (internal citations omitted). Substantial similarity involves an extrinsic element, focusing on the objective elements of the song, such as the melody and lyrics, as well an intrinsic element focusing on whether the two songs express ideas in a similar way causing the "total concept and feel of the disputed work" to resemble another song. *Id.* at 517-18 (internal quotations and citations omitted). Whether substantial similarity exists is based on an evaluation by a lay observer, and will not be found to exist if the similarity between the "works concerns only non-copyrightable elements." *Id.* at 17.

The Universal Defendants do not appear to dispute that Staggs has a valid copyright in the words and music of his Song. Further, while it is by no means clear that Staggs would be able to establish that the Universal Defendants had access to his Song, for purposes of the Motion to Dismiss, since Staggs has alleged that West had access to it through his MySpace page, and since

4

the Universal Defendants could conceivably have had access through West, the Court finds that this element is satisfied.

The core issue now before the Court is whether a substantial similarity arguably exists between the two songs, so that the claim of copyright infringement may proceed beyond the Motion to Dismiss phase.  Having reviewed the pleadings, the Court agrees with the Universal Defendants that, as a matter of law, there is no substantial similarity between the songs.

First, in evaluating the melodies of the two songs, an ordinary listener – the Court in this case – would quickly determine that the melodies of the songs are not similar.  In fact, the Court was unable to hear any portions of the songs that contained similar melodies.

As to the lyrics, in addition to Staggs claim that West's "Now throw ya' hands up in the sky" is identical to Staggs' "Hold your head up high," Staggs has submitted a chart detailing several other supposed similarities.  However, each of these allegedly identical phrases contain common words or phrases – such as "good life" – that simply are not copyrightable. *See Darden v. Peters,* 488 F.3d 277, 286 (4th Cir. 2007) ("The Copyright Office established a regulation providing examples of the types of works that fall into the category of works that lack a minimum level of creativity and do not qualify for copyright protection, including "[w]ords and short phrases such as names, titles, and slogans; familiar symbols or designs; mere variations of typographic ornamentation, lettering or coloring; mere listing of ingredients or contents." 37 C.F.R. § 202.1(a).").

As for a copyright in the Recording, not until late in the proceedings (but nowhere in the Complaint) has Staggs alleged that he in fact holds a copyright.  In this regard, he has presented a proverbial moving target, making analysis of his claim extremely difficult.  The Universal

5

Defendants, as a result, seek to preclude consideration of this claim on the grounds of its untimely assertion. Certainly that argument has some appeal.

However, subject to the caveat in the footnote,[4] the Court will deny without prejudice the Motion to Dismiss as to the Recording and will invite the Universal Defendants to challenge Staggs' claims of copyright in this regard on some basis other than the untimeliness of its assertion. Such further challenge, which may take the form of a Second Motion to Dismiss or one for Summary Judgment should be filed within the next thirty (30) days.

### IV.

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES WITHOUT PREJUDICE IN PART** the Universal Defendants' Motion to Dismiss.

A separate Order will issue.

/s/
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

August 14, 2009

---

[4] While the Court is aware that Staggs is acting *pro se,* his approach to Court procedures has been far too casual. He must immediately cease faxing pleadings to the Court, (i.e. they must be mailed in or personally delivered to the Clerk's Office), and he may not file surreplies to pleadings without prior Court approval.